**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERTO AVILA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. 4:26-cv-01549-CMS |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al.,** | ) | Removed from the Circuit Court of the City of St. Louis, Missouri (22nd Judicial Circuit), Case No. 2622-CC13558, Division 17 |
| **Defendants.** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ROBERTO AVILA'S EMERGENCY MOTION TO REMAND, REQUEST FOR EXPEDITED BRIEFING, AND REQUEST FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. FACTUAL AND PROCEDURAL BACKGROUND .......... 3
III. ARGUMENT .......... 4
A. Legal Standard. .......... 4
B. The Well-Pleaded Complaint Rule Forecloses Removal, Because Avila Pleads Only Missouri Claims. .......... 4
C. The *House* Settlement Is the NCAA's Defense, Not Avila's Claim. .......... 6
D. No Exception to the Well-Pleaded Complaint Rule Applies. .......... 7
1. Complete Preemption Does Not Apply. .......... 7
2. Avila's State Law Claims Do Not Necessarily Raise a Substantial, Disputed Federal Question .......... 8
3. No Supplemental Jurisdiction Exists Absent Original Jurisdiction. .......... 12
4. Expedited Briefing and Ruling Are Warranted. .......... 13
E. Fees and Costs Under 28 U.S.C. § 1447(c) Are Warranted. .......... 13
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,* 25 F.4th 1238 (10th Cir. 2022) ....... 8

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) ....... 8

*Bus. Men's Assurance Co. of Am.*, 992 F.2d 181 (8th Cir. 1993) ....... 4

*C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.*, 759 S.W.2d 883 (Mo. Ct. App. 1988) .... 5, 8-10

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ....... 4-7, 14

*Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Oper., Inc.*, 561 F.3d 904 (8th Cir. 2009) ....... 9

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) ....... 11

*College Athlete NIL Litigation*, No. 4:20-cv-3919 (N.D. Cal.) ....... 1

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....... 15

*Delta Dental of R.I. v. Blue Cross & Blue Shield of R.I.*, 942 F. Supp. 740 (D.R.I. 1996) ... 5, 8-10

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) .......... 2, 4-5, 8, 14

*Gray v. City of Valley Park*, No. 4:07-cv-00881-ERW, 2007 WL 9809046 (E.D. Mo. May 21, 2007) ....... 5-6

*Great N. Ry. Co. v. Alexander*, 246 U.S. 276 (1918) ....... 4

*Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002) ....... 4

*Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) ....... 5

*Gunn v. Minton*, 568 U.S. 251 (2013) ....... *Passim*

*Johnson v. NCAA*, Case No. 2:26-cv-00090 (S.D. Ohio, Jan. 28, 2026) ....... 2, 14

*Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908) ....... 4

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986) ....... 5, 10

*Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023) ....... 7-9

*Missouri ex rel. Carnahan v. Stifel, Nicolaus & Co.*, 648 F. Supp. 2d 1095 (E.D. Mo. 2009) ....... 14

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998) .......... *Passim*

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002) .......... *Passim*

*Tobiason v. BMO Bank N.A.*, 758 F. Supp. 3d 927 (E.D. Wis. 2024) .......... 10

*Wireless Tel. Fed. Cost Recovery Fees Litig.*, 343 F. Supp. 2d 838 (W.D. Mo. 2004) .......... 4, 11

**Statutes**

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1367 .......... 12

28 U.S.C. § 1441(a) .......... 4

28 U.S.C. § 1447(c) .......... 4, 13, 15

28 U.S.C. § 1447(d) .......... 13

Missouri Antitrust Law .......... 1-3, 8-9, 11

Mo. Rev. Stat. § 173.280 .......... 11

Ohio's Valentine Anti-Trust Act .......... 2, 14

Sherman Act .......... 1, 3, 10, 14

Plaintiff Roberto Avila ("Avila"), for his Memorandum in Support of Emergency Motion to Remand, states as follows:

## I. **INTRODUCTION**

This case was improperly removed from the Circuit Court of the City of St. Louis, Missouri twenty-one minutes before a scheduled temporary restraining order ("TRO") hearing. Defendant National Collegiate Athletic Association ("NCAA") filed its removal notice alleging federal question jurisdiction (ECF No. 1).[1] It does not exist, and this case should be immediately remanded.

This is a Missouri state case, pleaded exclusively under Missouri state law, asserting nine counts – breach of contract, breach of the implied covenant, violations of the Missouri Antitrust Law and Missouri's student-athlete name, image, and likeness ("NIL") statute, tortious interference, declaratory judgment, injunctive relief, and unjust enrichment. Not one count invokes federal law. The NCAA's removal is a frivolous attempt to delay emergency injunctive relief.

The NCAA's removal rests on a theory that because a federal court in California approved a class settlement in *In re College Athlete NIL Litigation*, No. 4:20-cv-3919 (N.D. Cal.) (the "*House* settlement"), *any* state-law claim touching on roster limits "arises under" federal law. The Supreme Court has flatly rejected that theory – repeatedly. The NCAA also attempts to convert a Missouri Antitrust Law claim into a federal Sherman Act claim, despite clear law to the contrary.

A defense based on a prior federal judgment "provides no basis for removal under § 1441(b)." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478 (1998). "[A] case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in

---

[1] Other than diversity jurisdiction, federal courts only have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983). A federal court's retained jurisdiction over a settlement cannot supply removal jurisdiction. *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33-34 (2002). The *House* settlement is the NCAA's *defense* – not Avila's claim. This is well-established, bedrock law. There is no excuse for the NCAA's frivolous filing.

The NCAA's reliance on *Gunn v. Minton*, 568 U.S. 251 (2013), does not support federal question jurisdiction. *Gunn* held that a case meets the "substantial" threshold for "arising under" jurisdiction only if the federal interests are "significant to the federal system as a whole" – not merely to the parties. *Id.* at 264. The NCAA asserts no meaningful argument that the alleged federal issues – of which there are none – are significant to the federal system, rather than merely to the parties in this case.

Avila's claims similarly do not attack, facially challenge, or seek to invalidate the *House* settlement. *Gunn* also held that for the "special and small category of cases" that qualify for the kind of federal question jurisdiction relied upon by NCAA, the federal issues must be "necessarily raised." *Id.* at 258 (internal quotation marks omitted). The NCAA ignores that Avila's claims that the NCAA breached its contract, the implied covenant, and Missouri antitrust law through its NCAA Manual and exclusion of the Class of 2022 from the five-season rule turn solely on Missouri state law.

Worse yet, the NCAA *knows* its removal arguments are frivolous. Earlier this year, the NCAA attempted the same move. In *Johnson v. NCAA*, the NCAA removed an Ohio state court case brought by an athlete seeking injunctive relief because the NCAA eligibility rules "violate Ohio's Valentine Anti-Trust Act." *See Johnson v. NCAA*, Case No. 2:26-cv-00090 (S.D. Ohio,

Jan. 28, 2026) (a copy of which is attached hereto as Exhibit A). The NCAA argued, as it does here, that the plaintiff's state law antitrust claim "is really just a Sherman Act claim under federal law." *Id*. The court flatly rejected the NCAA's argument, granting the plaintiff's emergency motion to remand the day after it was filed. *Id*.

Remand, on an expedited basis, with fees, is the only proper result.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Avila is a former Division I men's basketball player who competed for Indiana State University and Saint Louis University ("SLU") during the 2022–23 through 2025–26 seasons. He is currently enrolled at SLU pursuing a graduate degree and seeks eligibility for the 2026–27 season. In June 2026, the NCAA Division I adopted new eligibility legislation, effective August 1, 2026, that purportedly excluded only Avila and his class from the new Five-in-Five rule – the NCAA's *own rule* through its Manual.

On September 24, 2026, Avila filed his Verified Complaint and Petition for Emergency Relief (ECF No. 2, "Petition") and Motion for Emergency TRO (ECF No. 3, "TRO Motion") in the Circuit Court of the City of St. Louis, naming the NCAA and individual members of the NCAA Division I Board of Directors and Board of Governors. The Petition pleads nine counts, all arising under Missouri law: (1) breach of contract; (2) breach of the implied covenant; (3) violation of the Missouri Antitrust Law; (4) violation of Missouri's student-athlete NIL statute; (5) tortious interference with contractual relationship; (6) tortious interference with business expectancy; (7) declaratory judgment; (8) injunctive relief; and (9) unjust enrichment. No count is pleaded under federal law.

On September 24, 2026, Plaintiff's counsel emailed the Petition to NCAA counsel. On September 28, the Court set the TRO hearing for September 29 at 1:00 p.m. At 12:39 p.m. – 21 minutes before the hearing – the NCAA filed its Notice of Removal, after Plaintiff's counsel had

prepared for, traveled to, and appeared at the courthouse. The 2026–27 men's basketball season is imminent, and Avila's collegiate eligibility window cannot be recovered once lost.

## III. ARGUMENT

### A. Legal Standard.

Only actions that "could have been brought" originally in federal court are removable. 28 U.S.C. § 1441(a); *Franchise Tax Bd. of Cal.*, 463 U.S. at 7–8; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removing party bears the burden of establishing federal jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002).

Removal procedures "are to be strictly construed," and "a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta*, 537 U.S. at 32 (quoting *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 280 (1918)). The removing party bears the burden, and the court is "required to resolve all doubts about federal jurisdiction in favor of remand." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 343 F. Supp. 2d 838, 845 (W.D. Mo. 2004). If the court lacks subject-matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c).

### B. The Well-Pleaded Complaint Rule Forecloses Removal, Because Avila Pleads Only Missouri Claims.

The NCAA's removal attempt is improper pursuant to bedrock U.S. Supreme Court law. Under the well-pleaded complaint rule, federal-question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392; *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The plaintiff is the "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. "[A] defendant cannot, merely by injecting a federal question into an

action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing." *Id.* at 399.

The NCAA asserts that federal question jurisdiction exists because Avila's Missouri state law tortious interference claims "are premised in part on the NCAA's roster limitations" *as set forth in the NCAA Manual*. (ECF No. 1 ¶ 21.) This makes no sense. The NCAA claims that the roster limit at issue is also set forth in the *House* settlement, and somehow that creates federal question jurisdiction. That may be a defense the NCAA will assert – albeit a weak one. However, the NCAA ignores that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. A "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd.*, 463 U.S. at 11 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Caterpillar*, 482 U.S. at 392 n.7 (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986)).

All nine counts of Avila's Petition arise under Missouri state law. Not one invokes a federal statute, a federal constitutional provision, or federal common law. *See also C. Bennett Bldg. Supplies, Inc. v. Jenn Air Corp.*, 759 S.W.2d 883, 887–89 (Mo. Ct. App. 1988); *Delta Dental of R.I. v. Blue Cross & Blue Shield of R.I.*, 942 F. Supp. 740, 747–49 (D.R.I. 1996). The NCAA's reliance on *Gray v. City of Valley Park*, No. 4:07-cv-00881-ERW, 2007 WL 9809046, at *5 (E.D. Mo. May 21, 2007), is misplaced. The NCAA quotes *Gray* only for: "Looking at Plaintiffs' well

pleaded complaint, it is clear that in order to adjudicate this case the Court must address federal questions" (ECF No. 1 ¶ 25). However, in *Gray*, the court found that "Plaintiff's claim is that the ordinances in question are invalid," and besides one state law basis, "[t]he remaining bases for invalidation are federal law, and more specifically, the Landlord Ordinance is only challenged on Federal Law grounds." 2007 WL 9809046, at *5. Again, that was based upon the *Plaintiff's* claims – not the Defendant's defense theories. *Id*. ("A defense that raises a federal question is inadequate to confer federal jurisdiction."). By its own terms, *Gray* looked to federal questions in that plaintiff's well-pleaded complaint, confirming the rule here: Avila's complaint pleads no federal claims and invokes no federal question.

**C. The *House* Settlement Is the NCAA's Defense, Not Avila's Claim.**

The Supreme Court has squarely held that "Congress has not authorized removal" based on a federal defense, including one rooted in a prior federal judgment. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 472 (1998). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Id*. at 475. In *Rivet*, the Court unanimously held:

> [C]laim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review.

The prior federal judgment "does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether." *Rivet*, 522 U.S. at 476. "**[A] defendant cannot remove on the basis of a federal defense**." *Id*. at 478 (emphasis added).

The NCAA's position is precisely the position rejected in *Rivet* – it contends that because a federal court approved the *House* settlement, which it argues provides a federal defense, then Avila's state-law claims are somehow "federal" in character. But the *House* settlement is the NCAA's compliance *defense* (and a weak one) – it is not an element of any of Avila's nine causes

of action, and is not even referenced in any of Avila's causes of action. As *Caterpillar* held, "the presence of a federal question . . . in a defensive argument does not overcome" the well-pleaded complaint rule; the plaintiff remains master of the complaint and may choose a state forum by eschewing federal claims. 482 U.S. at 398–99.

In *Syngenta*, 537 U.S. 28, the Supreme Court confronted a nearly identical argument: the removing party contended that a federal court's retained jurisdiction over a class settlement authorized removal of a later-filed state action. The Supreme Court rejected that reasoning: petitioners "fail[ed] to explain how the Alabama District Court's retention of jurisdiction over the Price settlement authorized removal of the Henson action." *Syngenta*, 537 U.S. at 34. "Ancillary jurisdiction, therefore, cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441." *Id*.

The NCAA's Notice of Removal purportedly relies on the retention of jurisdiction by the court handling the *House* settlement, which it describes as "continuing, exclusive jurisdiction" (ECF No. 1 ¶ 15). That is the precise settlement-based theory *Syngenta* rejected. If the NCAA believes the *House* settlement bars Avila's claims (it does not), it may raise that defense in state court under *Rivet*.

**D. No Exception to the Well-Pleaded Complaint Rule Applies.**

There are only two exceptions to the well-pleaded complaint rule: "when the state-law claims (1) are completely preempted by federal law or (2) necessarily raise a substantial, disputed federal question." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 709 (8th Cir. 2023). Neither applies.

**1. Complete Preemption Does Not Apply.**

The NCAA does not assert that Avila's state law claims are complete preemption – nor could it. Complete preemption applies only "when Congress expressly so provides . . . or when a

federal statute wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The NCAA does not invoke complete preemption—and none exists here. No Act of Congress wholly displaces Missouri breach-of-contract, antitrust, NIL, tortious-interference, or unjust-enrichment claims. A Rule 23 settlement approval and injunction is a judicial act, not an Act of Congress. *See Delta Dental of R.I.*, 942 F. Supp. at 747–49; *see also C. Bennett*, 759 S.W.2d at 887–89.

### 2. Avila's State Law Claims Do Not Necessarily Raise a Substantial, Disputed Federal Question

The NCAA cannot satisfy the narrow *Grable*/*Gunn* exception. That exception reaches only a "special and small category" of cases in which a state-law claim (1) necessarily raises a stated federal issue, (2) that is actually disputed, (3) that is substantial, and (4) that a federal forum may entertain without disrupting the federal-state balance. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The test is ***conjunctive***. And even if such an issue exists, this Court must take care not to "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id. Grable* expressly cautions against "the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door" and confirms that courts have not treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. 545 U.S. at 313–14. None of the four elements is met here.

***First***, none of Avila's claims necessarily raises a stated federal issue – and certainly not his Missouri Antitrust law claim merely because Missouri construes its statute in harmony with federal precedent or because Avila cites *NCAA v. Alston*, 594 U.S. 69, 79 (2021), in his state court filings. As the Eighth Circuit has held, a "federal issue is necessarily raised when it 'is a *necessary* element of one of the well-pleaded state claims' in the plaintiff's complaint." *Minnesota by Ellison*, 63 F.4th at 711 (quoting *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added)); *see also Bd. of Cnty.*

*Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1266 (10th Cir. 2022) ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (citation omitted)). "This inquiry demands precision." *Minnesota by Ellison*, 63 F.4th at 711 (quoting *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Oper., Inc.*, 561 F.3d 904, 914 (8th Cir. 2009)). "A removing defendant should be able to point to the specific elements of [the plaintiff's] state law claims that require proof under federal law." *Minnesota by Ellison*, 63 F.4th at 711 (internal quotations and citations omitted).

To be clear, the roster limitation at the basis of the NCAA's removal: (1) is but one part of the *relief* sought by the Plaintiff – and not the eligibility rule challenged; (2) is based upon the NCAA Manual – and not a stated federal issue or federal injunction; and (3) omits that Plaintiff specifically averred that "even absent the roster-limit restraint, the eligibility relief independently benefits Mr. Avila [as] several other Division I schools want him on their rosters, have open roster spots available for him, and are prepared to compensate him – contingent only upon a determination of eligibility." (ECF No. 3, TRO Motion, at p. 22, ¶ 73). Avila's claims in no way necessarily raise a stated federal issue, even under the most liberal reading of the law or allegations.

With respect to the NCAA's argument that Missouri Antitrust Law claim somehow necessarily raises a stated federal issue, this is effectively an attempt at preemption. Contrary to the NCAA's assertion, Section 416.141 of the Missouri Antitrust Act is a rule of construction, certainly not a jurisdictional grant to federal courts. Missouri antitrust statutes are construed in harmony with comparable federal interpretations, **but the Missouri Antitrust Law claim remains a distinct state-law count**. Missouri courts have held that although federal antitrust interpretations are persuasive authority, Missouri antitrust law remains intact, not preempted, and

Missouri circuit courts have jurisdiction. *C. Bennett*, 759 S.W.2d at 889. *Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island* likewise remanded a state antitrust action that could have been brought under the Sherman Act, observing that there has never been a clear congressional intent to pre-empt state antitrust regulation. 942 F. Supp. at 747-48. *Grable* holds that the mere need to analyze federal law is insufficient, 545 U.S. at 313, and *Gunn* recognizes that state courts can be expected to "hew closely to the pertinent federal precedents," 568 U.S. at 262. The NCAA's response, therefore, confuses persuasive merits authority with a jurisdictional element. Avila's citations to *Alston* in his state court filings as persuasive authority no more federalizes the Missouri state claims than citing any federal decision. *Merrell Dow*, 478 U.S. at 813-14.

The relief Avila seeks does not convert his state-law claims into federal ones. A federal issue is necessarily raised only if it is "impossible to decide" the state-law claim without ***deciding the federal issue***. *Tobiason v. BMO Bank N.A.*, 758 F. Supp. 3d 927, 932 (E.D. Wis. 2024). Its discussion of injunctive relief is equally direct: such counts "simply seek a specific type of remedy, authorized by [state] law," for underlying state-law violations. *Id.* at 932. Avila's requested relief is directed at the NCAA's own conduct – its arbitrary exclusion of Avila and his class in direct breach of the NCAA Manual – not at the *House* settlement. Whether the *House* settlement bars or permits the NCAA to accommodate Avila is a defense the NCAA may raise, not an element of Avila's claims; and it belongs in the state court as a defense under *Rivet*. The NCAA's assertion that Congress has not manifested an intent for state courts to modify federal injunctions, again, is a defense, not a jurisdictional grant.

***Second***, there is no federal issue actually disputed here. Avila does not challenge the *House* settlement, nor does he challenge the Sherman Act. He challenges the NCAA's arbitrary and

unlawful conduct under Missouri law. Every count can be decided without resolving any federal question. The contract and implied covenant counts turn on the NCAA's bylaws, promises and Missouri law; the NIL count turns on Mo. Rev. Stat. § 173.280; the unjust-enrichment count turns on Missouri equity; and the declaratory and injunctive counts seek Missouri-law remedies. The Missouri antitrust count turns on the Missouri Antitrust Law, and the NCAA's own eligibility rules as the alleged restraint, not on a federal antitrust statute or the *House* settlement. Each count can clearly be adjudicated without deciding any federal question.

The NCAA admits these counts rest only "in part" on roster limitations (ECF No. 1 at p. 7, ¶ 21) and quotes Avila's allegation of interference through the NCAA's "eligibility determination and roster-limit restrictions." But even that is a misrepresentation by the NCAA. Avila's claims rest entirely on the NCAA's bylaws, exclusion, and conduct with respect to his ***eligibility***. It is merely one portion of his requested *relief* that the roster limits in the NCAA Manual be enjoined for Avila due to the NCAA's conduct here – entirely independent of any federal question or the *House* settlement. Under *In re Wireless*, removal is not justified unless "every legal theory supporting the claim requires the resolution of a federal issue." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 343 F. Supp. 2d 838, 853 (W.D. Mo. 2004) (quotation omitted). The same conclusion follows from *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 810 (1988). A claim does not arise under federal law when an alternative state-law theory supports relief without resolving the federal issue. The NCAA cannot convert one portion of requested relief relating to roster limits into a federal element of every count.

***Third***, the alleged "federal issue" is not *substantial* to the federal system. Substantiality under *Gunn* looks to the "importance of the issue to the federal system as a whole," not to the parties. 568 U.S. at 260. In *Grable*, the Government had a "direct interest" in the meaning of its

own notice statute and the federal issue would govern federal tax-seizure procedure nationwide. 545 U.S. at 315. Here, the dispute concerns one athlete, one school, and one season. It is fact-bound and situation-specific, not a federal rule whose resolution will control numerous cases. The NCAA says a Missouri ruling would have present effect because the *House* settlement applies nationwide. But there is no facial challenge brought against the *House* settlement, or the roster limits in general. Avila is not asking a Missouri court to bind the court handling the *House* settlement. The NCAA misrepresents the claims at issue.

***Fourth***, removal would disrupt the federal-state balance. Exercising jurisdiction would risk the "potentially enormous shift of traditionally state cases into federal courts" that *Grable* identified, and here "no welcome mat meant keep out." 545 U.S. at 319. If every state-law claim touching a federal class settlement became removable, federal courts would receive contract, tort, antitrust, and NIL actions whenever a defendant could identify a federal judgment or federal precedent. The NCAA's "350 schools" point describes the breadth of the NCAA's business; it demonstrates the flood concern rather than a substantial federal issue in this case. Missouri's interests in adjudicating its own contract, antitrust, NIL, and tort laws are substantial, while the court handling the *House* settlement remains available to protect its judgment.

The NCAA cannot satisfy the narrow *Grable*/*Gunn* exception. Immediate removal is necessary.

### 3. No Supplemental Jurisdiction Exists Absent Original Jurisdiction.

Because no claim in this case falls within this Court's original jurisdiction, supplemental jurisdiction under 28 U.S.C. § 1367 is unavailable. *Syngenta* explains that a court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. 537 U.S. at 33-34.

#### 4. Expedited Briefing and Ruling Are Warranted.

The 2026–27 men's basketball season is imminent. Avila brought this case for emergency relief for that reason. Every day this case remains in federal court erodes the emergency injunctive relief Plaintiff seeks. Avila's collegiate eligibility window and season cannot be recovered once lost. The NCAA's removal has already derailed a noticed and impending emergency TRO hearing. The removal issues are purely legal and require no discovery. Plaintiff respectfully requests that the Court: (1) order the NCAA to respond within two (2) business days; (2) permit Plaintiff to file a reply within one (1) business day thereafter; (3) rule on the papers or set an expedited hearing; and (4) direct the Clerk to immediately mail and transmit a certified copy of the remand order to the Clerk of the Circuit Court of the City of St. Louis upon entry, pursuant to 28 U.S.C. § 1447(c), so that "[t]he State court may thereupon proceed with such case." Remand orders for lack of subject-matter jurisdiction are not reviewable on appeal. 28 U.S.C. § 1447(d).

### E. Fees and Costs Under 28 U.S.C. § 1447(c) Are Warranted.

Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). *Martin v. Franklin Cap. Corp.* holds that the test should "recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." 546 U.S. 132, 140 (2005). Courts may award attorney's fees under § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

The Court denied fees in *Martin* because the removing party relied on case law only *later* held unsound. *Id.* at 135-36. That rationale does not assist the NCAA. The law is well-established. There is no sound basis for seeking removal, except to prolong Avila's attempt to obtain his

emergency relief. *Syngenta* and *Rivet* already foreclosed removal based on a prior settlement, retained federal jurisdiction, or a federal preclusion defense. Each of the NCAA's bases are rejected by bedrock law. The timing further supports fees because the noticed hearing had been prepared for and attended, then rendered useless by the removal; the preparation and appearance must be duplicated on remand. *See Missouri ex rel. Carnahan v. Stifel, Nicolaus & Co.*, 648 F. Supp. 2d 1095, 1099 (E.D. Mo. 2009), *order clarified* (Aug. 7, 2009) (granting request for costs and attorneys' fees incurred in addressing removal and remand issues where no objectively reasonable basis for removal existed).

The NCAA's removal lacked an objectively reasonable basis. It contradicts clear Supreme Court authority – *Caterpillar*, *Franchise Tax Board*, *Rivet*, *Syngenta*, *Grable* and *Gunn*. The NCAA cites no decision sustaining removal on this theory, and *Syngenta* flatly rejected a settlement-based removal.

Further, the NCAA *knows* that its arguments for removal are frivolous – as it tried and failed on these arguments already. Earlier this year, the NCAA attempted the same move. In *Johnson v. NCAA*, the NCAA removed an Ohio state court case brought by an athlete seeking injunctive relief because the NCAA eligibility rules "violate Ohio's Valentine Anti-Trust Act." *See Johnson v. NCAA*, Case No. 2:26-cv-00090 (S.D. Ohio, Jan. 28, 2026) (a copy of which is attached hereto as Exhibit A). The NCAA argued, as it does here, that the plaintiff's state law antitrust claim "is really just a Sherman Act claim under federal law." *Id*. The court flatly rejected the NCAA's argument, granting the plaintiff's emergency motion to remand the day after it was filed. *Id*. The NCAA has no excuse.

Plaintiff requests an award of attorneys' fees and costs including: (i) fees and costs of preparing and filing this Motion and any reply or argument; and (ii) fees and expenses of preparing

for, traveling to, and appearing at the September 29, 2026 state-court TRO hearing, which were rendered useless by the removal and must be duplicated upon remand as direct consequences of the removal. Plaintiff requests that it be granted its attorney fees and costs, and be permitted, subsequent to remand, to submit a declaration of specific costs and fees subject to this Court's authority under 28 U.S.C. § 1447(c). *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction.").

## IV. CONCLUSION

For all the foregoing reasons, this Court lacks subject matter jurisdiction, and the case should be remanded to the Circuit Court of the City of St. Louis. For the Court's consideration, proposed orders granting Plaintiff's request for expedited briefing and separately granting Plaintiff's request for remand are attached hereto as Exhibits B and C respectively.

**WHEREFORE**, Plaintiff Roberto Avila respectfully requests that this Court:

1. Remand this action to the Circuit Court of the City of St. Louis, State of Missouri (22nd Judicial Circuit), Case No. 2622-CC13558, for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1447(c);

2. Grant the requested expedited briefing and an expedited ruling on this Motion;

3. Direct the Clerk to immediately mail and transmit a certified copy of the remand order to the Clerk of the Circuit Court of the City of St. Louis pursuant to 28 U.S.C. § 1447(c), so that the state court may promptly proceed on Plaintiff's emergency TRO Motion;

4. Award Plaintiff his just costs and actual expenses, including attorneys' fees, incurred as a result of the removal; and

5. Grant such other and further relief as this Court deems just and proper.

Dated: September 30, 2026

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: */s/ Andrew W. Blackwell*
Andrew W. Blackwell, #64734
120 S. Central Avenue, Suite 1500
St. Louis, Missouri 63105
(314) 863-1500
ablackwell@bbdlc.com

**DUANE MORRIS LLP**
Andrew J. Rudowitz (pro hac vice motion forthcoming)
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1974
AJRudowitz@duanemorris.com

*Attorneys for Plaintiff Roberto Avila*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*By: /s/ Andrew W. Blackwell*
Andrew W. Blackwell